UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

YICHENG QIU,

                    Petitioner,                    CIVIL ACTION NO. 3:25-CV-02569

         v.                                        (MEHALCHICK, J.)

CRAIG A. LOWE, et. al.,

                    Respondents.

**MEMORANDUM**

Petitioner, Yicheng Qiu ("Qiu"), a Chinese national, brings this petition for writ of habeas corpus. (Doc. 1). On December 31, 2025, Qiu filed the instant petition and motion for a preliminary injunction, requesting that Respondents Craig A. Lowe ("Lowe"), Patrick Maddas, Kristi Noem, Todd M. Lyons, and Pamela Bondi[1] (collectively, "Respondents") release him from custody at the Pike County Correctional Facility in Pike County, Pennsylvania and that the Court enjoin Respondents from detaining him pursuant to 8 U.S.C.

---

[1] The government asserts that the only proper respondent in this case is Lowe, Warden of the Pike County Correctional Facility. (Doc. 5, at 1). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 (stating "[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) (stating "if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Qiu is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, ¶ 16); *see Rumsfeld*, 542 U.S. at 434. All other respondents are **DISMISSED**. However, as Lowe is acting as an agent of the federal government by detaining Qiu on behalf of Immigration and Customs Enforcement ("ICE"), the government will be bound by the Court's judgment. *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release).

§ 1225. (Doc. 1, at 18; Doc. 2, at 1). For the following reasons, Qiu's petition (Doc. 1) shall be **GRANTED,** Lowe is **ORDERED** to release Qiu from custody, and Lowe is **ENJOINED** from detaining Qiu pursuant to 8 U.S.C. § 1225.[2]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background and factual summary are derived from Qiu's petition. (Doc. 1). Qiu is a Chinese national who has resided in the United States since May 2, 2024. (Doc. 1, ¶¶ 15, 54). The DHS briefly detained Qiu on or around May 2, 2024, but subsequently released him on his own recognizance. (Doc. 1, ¶ 57). Lowe has not provided any evidence or arguments that Qiu violated the terms of his release or has a criminal record. (Doc. 5).

On September 19, 2025, Qiu reported to an ICE office in Philadelphia for a routine check-in appointment when ICE officers detained him. (Doc. 1, ¶ 55; Doc. 5, at 13). ICE determined that under 8 U.S.C. § 1225, Qiu is not entitled a bond hearing and did not make a determination as to whether Qiu possess a flight or safety risk. (Doc. 1, ¶¶ 5, 41, 65-66; Doc. 5, at 3-4). On December 31, 2025, Qiu filed a petition for writ of habeas corpus. (Doc. 1). Pursuant to the Court's Order to Show Cause (Doc. 3), Lowe filed a response to Qiu's petition on January 6, 2025. (Doc. 5).

## II.    LEGAL STANDARD

---

[2] Because the Court grants Qiu's habeas petition and provides him with the relief he seeks in his motion for a preliminary injunction, Qiu's motion for a preliminary injunction (Doc. 2) is **DENIED as moot**. *See Sutton v. City of Philadelphia*, 21 F. Supp. 3d 474, 481 (E.D. Pa. 2014) (finding that a plaintiff being released from custody mooted his request for injunctive relief); *see also Thakker v. Doll*, 451 F. Supp. 3d 358, 362 n.1 (M.D. Pa. 2020) (same); *see also Kashranov v. Jamison*, No. 2:25-CV-05555, 2025 WL 3188399, at *3 (E.D. Pa. Nov. 14, 2025) (addressing an immigration detainees' habeas petition on the merits rather than addressing the petitioner's motion for a preliminary injunction).

The district courts' power to grant the writ of habeas corpus is governed by 28 U.S.C. § 2241. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While habeas relief typically involves release from custody, courts may order alternative relief such as prohibitions on removal in immigration related habeas cases, *see J. G. G.*, 604 U.S. at 673 (finding that a noncitizen detained by ICE may challenge removal in a habeas petition), or a bond hearing, if the Court determines that a noncitizen habeas petitioner is entitled to one under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see also Cantu-Cortes v. O'Niell*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections).

## III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). Provisions of the Immigration and Nationality Act ("INA") limit federal courts' jurisdiction over certain immigration matters. *See Jennings v. Rodriguez*, 583 U.S. 281,

292 (2018) (noting that the INA creates "potential obstacles" to jurisdiction); *see also Kashranov*, 2025 WL 3188399, at *3 (stating "the INA contains several provisions limiting the authority of federal courts in immigration matters"). Further, courts apply a discretionary exhaustion of administrative remedies requirement when assessing habeas petitions. *See Kashranov*, 2025 WL 3188399, at *4; *see also Quispe v. Rose*, No. 3:25-CV-02276, 2025 WL 3537279, at *4 (M.D. Pa. Dec. 10, 2025).

28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). However, sections 1252(g), 1252(b)(9), and 1252(a) of the INA limit the authority of federal courts to grant writs of habeas corpus in immigration matters. *See Jennings*, 583 U.S. at 292-96; *see also Kashranov*, 2025 WL 3188399, at *3; *see also Del Cid v. Bondi*, No. 3:25-cv-00304, 2025 WL 2985150, at *12 (W.D. Pa. Oct. 23, 2025).

8 U.S.C. § 1252(g) provides that "[e]xcept as provided in this section and notwithstanding any other provision of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." Section 1252(g) does not apply to every claim that can "arise from" the Attorney General's commencement, adjudication, or execution of removal orders against a noncitizen. *Jennings*, 583 U.S. at 294. Rather, § 1252(g) applies "just [to] those three specific actions themselves." *Jennings*, 583 U.S. at 294; *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Kashranov*, 2025 WL 3188399, at *3. Here, Qiu does not challenge the commencement of his removal proceedings, the Attorney

4

General's decision to adjudicate his case, or the execution of a removal order. Qiu, instead, contests the legality of his detention without a bond hearing. (Doc. 1). Accordingly, § 1252(g) does not bar the Court's jurisdiction over Qiu's writ of habeas corpus.

8 U.S.C. § 1252(b)(9) provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]," and that "no court shall have jurisdiction, by habeas corpus under [28 U.S.C. § 2241] or any other habeas corpus provision . . . to review such an order or such questions of law or fact." In *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999), the Supreme Court clarified that § 1252(b)(9) bars district court review only for petitioners "asking for review of an order of removal," "the decision to detain them in the first place or to seek removal," "or the process by which their removability will be determined."

Recently, in *Khalil v. President, United States*, 164 F.4th 259, 274-76 (3d Cir. 2026), the Third Circuit determined that 8 U.S.C. § 1252(b)(9) strips district courts of subject matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later, on a PFR. *Khalil*, 164 F.4th at 274-76. Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Khalil*, 164 F.4th at 274-76; *see also Jennings*, 583 U.S. at 294 (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the

government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Alexey Kashranov*, 2025 WL 3188399 at *5 (E.D. Pa. Nov. 14, 2025) (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during initial removal proceedings. *Khalil*, 164 F.4th at 274-76 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction because the legal questions of whether § 1225(b) or § 1226(a) applies to Qiu and whether Qiu is entitled to a bond hearing are wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Khalil*, 164 F.4th at 274-760.

Finally, 8 U.S.C. § 1252(a)(2)(B)(ii) precludes district court review of decisions by the Attorney General or Secretary of Homeland Security "the authority for which is specified under the subsection to be in [their] discretion." Qiu's petition does not challenge a discretionary choice to detain him. Qiu challenges whether the government may detain him under § 1226 without a bond hearing. (Doc. 1). The scope of the government's statutory detention authority is "not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001);

*see also Kashranov*, 2025 WL 3188399, at *3. Therefore, § 1252(a)(2)(B)(ii) does not bar the Court's jurisdiction over Qiu's writ of habeas corpus.

A. ADMINISTRATIVE EXHAUSTION DOES NOT BAR THE COURT'S JURISDICTION.

A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, "exhaustion exists as a judicially created doctrine applied at the Court's discretion." *Kashranov*, 2025 WL 3188399, at *3 (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)); *see also Del Cid*, 2025 WL 2985150, at *13; *see also Quispe*, 2025 WL 3537279, at *4. No statute requires administrative exhaustion in habeas proceedings under § 2241. *See Kashranov*, 2025 WL 3188399, at *3; *see also Del Cid*, 2025 WL 2985150, at *13; *see also Quispe*, 2025 WL 3537279, at *4. Here, further administrative review serves no practical purpose. According to Lowe, Qiu is detained pursuant to § 1225(b)(2), under which immigration judges lack authority to hear bond requests. (Doc. 5, at 12-13); *see Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025); *see also Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025). Qiu will be precluded from obtaining a bond hearing if he seeks further administrative review, and these circumstances constitute good cause to excuse exhaustion. *See Kashranov*, 2025 WL 3188399, at *3 (excusing exhaustion where petition is detained pursuant to 1225(b) and precluded from obtaining a bond hearing); *see also Del Cid*, 2025 WL 2985150, at *13 (excusing exhaustion of administrative remedies because the case solely hinged on the statutory construction of § 1225 and § 1226).

**IV.    DISCUSSION**

Having assessed jurisdiction, the Court now turns to whether Qiu was improperly detained under 8 U.S.C. 1225(b)(2)(A), when he should have been detained under 8 U.S.C. § 1226(a), and whether Lowe violated Qiu's due process rights. (Doc. 1, ¶¶ 64-66, 71-75). Qiu

contends that he could only have been detained under § 1226(a), and under that provision, he is entitled to a bond hearing. (Doc. 1, ¶¶ 64-66). According to Qiu, the Court must order his release because Lowe deprived him of adequate due process by refusing to provide him with a bond hearing. (Doc. 1, ¶¶ 64-66, 71-75). Lowe counters that Qiu was properly detained under §1225(b)(2)(A) and that an immigration detainee has no constitutional right to release on bond when held pursuant to a statutory provision, like §1225(b)(2)(A), that requires mandatory detention. (Doc. 5, at 14-36).

A.  QIU WAS IMPROPERLY DETAINED UNDER 8 U.S.C. 1225(B)(2)(A).

Qiu avers that he can only be detained under 8 U.S.C. § 1226, which entitles him to a bond hearing. (Doc. 1, ¶¶ 64-66). Lowe contends that Qiu falls squarely within the statutory definition of noncitizens subject to detention pursuant to 8 U.S.C. § 1225(b)(2)(A), under which he is ineligible for release on bond. (Doc. 5, at 14-23).

The INA is a comprehensive statute regulating immigration, which has been repeatedly reworked by Congress since its enactment in 1952. *See Kashranov*, 2025 WL 3188399, at *1; *see also Quispe*, 2025 WL 3537279, at *5. In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009. Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, and they may be released only "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583

U.S. at 288 (citing § 1182(d)(5)(A)); *see Kashranov*, 2025 WL 3188399, at \*1. Two recent BIA decisions eliminated the availability of bond hearings under § 1225(b)(2)(A). In *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), the BIA held that an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and is subsequently placed in removal proceedings, is detained under § 1225 and is ineligible for any subsequent release on bond. In *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025), the BIA held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for bond hearings.

To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *See Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. July 24, 2025); *see also Kashranov,* 2025 WL 3188399, at \*6. Section 1225(b)(2)(A) applies only to an alien who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at \*6; *see Quispe*, 2025 WL 3537279, at \*5-6; *see also Bethancourt Soto v Soto*, No. 25-cv-16200, 2025 WL 2976572, at \*5 (D.N.J. Oct. 22, 2025) (collecting cases). Lowe contends that Qiu is an applicant for admission and seeking admission under § 1225(b)(2)(A). (Doc. 5, at 14-23).

Section 1225(a)(1) defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *see Jennings*, 583 U.S. at 286. As the phrase "alien seeking admission" is not defined in § 1225, the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Quispe*, 2025 WL 3537279, at \*5; *see also Kashranov*, 2025 WL 3188399,

at \*6; *see also J.A.M. v. Streeval*, No. 4:25-cv-342, 2025 WL 3050094, at \*5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *See Quispe*, 2025 WL 3537279, at \*5-6; *see also Kashranov*, 2025 WL 3188399, at \*6; *see also Del Cid*, 2025 WL2985150, at \*16 n. 7; *see also J.A.M.*, 2025 WL 3050094, at \*3; *see also Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at \*6 (N.D. Ill. Oct. 16, 2025); *see also Cantu-Cortes*, 2025 WL 3171639, at \*2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at \*13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 2025 WL 2976572, at \*6. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[3] *Kashranov*, 2025 WL 3188399, at \*6; *see Quispe*, 2025 WL 3537279, at \*5-6.

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Certain noncitizens, who are already in the country, can be detained pending the outcome of their removal proceedings under § 1226(a). *See Jennings*, 583 U.S. at

---

[3] The Court acknowledges that the Fifth Circuit recently issued a decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at \*5 (5th Cir. 2026), holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* is not binding on the Court, and the Court declines to follow it here.

288-89; *see also Quispe*, 2025 WL 3537279, at *5-6. Section 1226(a) "[a]pplies to aliens already present in the United States" and "creates a default rule for those aliens by permitting – but not requiring – the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Cantu-Cortes*, 2025 WL 3171639, at *1 (citing *Jennings*, 583 U.S. at 303); *see Quispe*, 2025 WL 3537279, at *5-6. Under § 1226(a), the Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). "Immigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)); *see Quispe*, 2025 WL 3537279, at *5-6. At a bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); see *Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice ("DOJ") announced a new policy, which provides that all persons who entered the United States without inspection, regardless of when the person is apprehended, shall now be subject to mandatory detention provision under § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Feb. 5, 2026). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for an extended period of time before they are apprehended by ICE. *See Cantu-Cortes*, 2025 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *see also Kashranov*,

2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are 'seeking admission,'" and a petitioner who lived in the United States for almost two years was not seeking admission but "already here"); *see also Del Cid*, 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *see also Quispe*, 2025 WL 3537279, at *5-6 (finding the same); *see also Soto*, 2025 WL 2976572 at *7 (collecting cases).

Here, § 1226(a), not § 1225(b)(2)(A), applies to Lowe's detention of Qiu. While Lowe asserts that Qiu is "seeking admission" to the United States because he has not been lawfully admitted, and as such, he is subject to mandatory detention under §1225(b)(2)(A), the Court finds that Qiu is not seeking admission into the United States. (Doc. 5, at 14-23). Qiu has already been residing in the United States since 2024. (Doc. 1, ¶ 54). Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Kashranov,* 2025 WL 3188399, at *6; *see also Quispe,* 2025 WL 3537279, at *5-6. Qiu is not actively attempting to come into the United States at a border or port of entry. (Doc. 1, ¶ 54). Based on the plain meaning of the phrase "seeking admission", Qiu sought admission when he entered the United States on May 2, 2024, and ICE released him on his own recognizance. (Doc. 1, ¶¶ 54, 57); *see Kashranov,* 2025 WL 3188399, at *6 (stating "seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"); *see also Quispe,* 2025 WL 3537279, at *5 (stating the same).

Instead, § 1226(a) applies to individuals, like Qiu, who have been residing in the United States for an extended period of time. *See Cantu-Cortes,* 2025 WL 3171639, at *2; *see also Kashranov,* 2025 WL 3188399, at *1; *see also Quispe,* 2025 WL 3537279, at *5. Unlike §

1225(b)(2)(A), § 1226(a) provides for bond or conditional parole. As such, mandatory detention is not warranted for Qiu.

B. QIU'S CONTINUED DETENTION UNDER § 1225(b)(2)(A) VIOLATES HIS DUE PROCESS RIGHTS.

Qiu avers that he has a fundamental interest in being free from government confinement, and that the government's detention of him without a bond hearing and determination of whether he is a flight or public safety risk violates his right to due process. (Doc. 1, ¶¶ 71-75). Lowe counters that as an immigration detainee, Qiu has no constitutional right to release on bond when held pursuant to a statutory provision requiring mandatory detention. (Doc. 5, at 32-37).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Qiu's favor because Lowe has deprived Qiu of his physical liberty through improper detention without the possibility of bond under § 1225(b)(2)(A). *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (stating "the most elemental of liberty interests [is] the interest in being

free from physical detention by [the] government."); *see also Zadvydas*, 533 U.S. at 690 (stating "[f]reedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects"); *see also Quispe*, 2025 WL 3537279, at *7 (finding that detaining a noncitizen without a bond hearing is a deprivation of a fundamental liberty interest). The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Qiu's favor because Qiu remains erroneously detained without the possibility of release on bond pursuant to § 1225(b)(2)(A). *See Soto*, 2025 WL 2976572, at *8 (citing *Barrios v. Shepley*, No. 1:25-cv-00406, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *see also Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Quispe*, 2025 WL 3537279, at *7 (finding the same); *see also Kashranov*, 2025 WL 3188399, at *5 (finding a lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Qiu's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of aliens at future immigration proceedings and to prevent danger to the community. *See Zadvydas*, 533 U.S. at 690; *see also Soto*, 2025 WL 2976572, at *8. Qiu poses no such risk to the government's interest in detaining him. Qiu has complied with the conditions of his release, even reporting to an ICE office in Philadelphia despite the risk of detention. (Doc. 1, ¶ 55; Doc. 5, at 13). There is also no evidence that Qiu has a criminal record, and Lowe does not allege that Qiu poses a fight risk or risk to the community. (Doc. 5). As each *Mathews* factor weighs in Qiu's favor, his mandatory detention under § 1225(b)(2)(A) violates his procedural due process rights.

## V.    CONCLUSION

For the foregoing reasons, Qiu's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Lowe is **ORDERED** to release Qiu from custody at the Pike County Correctional Facility. Lowe is also permanently enjoined from re-detaining Qiu under § 1225(b)(2)(A). Qiu may move to reopen this matter if Lowe seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing. Qiu's motion for a preliminary injunction is **DENIED as moot**. (Doc. 2).

An appropriate Order follows.

**BY THE COURT:**

**Dated: February 25, 2026**              */s/ Karoline Mehalchick*
                                           **KAROLINE MEHALCHICK**
                                           **United States District Judge**

15